UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **CHARLEY JAMES** | **CIVIL ACTION NO. 20-0308** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **SHERIFF SAMMY BYRD, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Plaintiff Charley James, a former prisoner at Bayou Correctional Center ("BCC") proceeding pro se and in forma pauperis, filed the instant proceeding on approximately March 9, 2020, under 42 U.S.C. § 1983.[1] He names Sheriff Sammy Byrd and Nurse Welch as defendants in their individual and official capacities.[2]

For reasons that follow that, the Court should, with the exception of Plaintiff's claims against Nurse Welch for forcing him to accept the wrong medication and refusing to treat him when he contracted influenza, dismiss Plaintiff Charley James' claims.[3]

## Background

Plaintiff first presents the following claims:

° Sheriff Byrd does not maintain a "grievance system" at BCC, and officials destroy and fail to answer grievances; and

---

[1] Plaintiff is now confined in Tensas Detention Center.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

[3] The undersigned directed the Clerk of Court, in a separate Memorandum Order, to serve Plaintiff with summons forms for the retained claims.

> ° BCC lacks "muslim call out" and "Church call out," and "officials put pressure on Plaintiff to significantly modify his religious behavior . . . . Plaintiff acted in a way that violated his religious beliefs from the lack of medication(s)."

[doc. #s 1, pp. 3-10; 15, p. 3; 17, p. 1].

Plaintiff claims that Sheriff Byrd failed to train his subordinates. [doc. # 15, p. 1].

Plaintiff claims that Sheriff Byrd retaliated against him after he filed grievances, transferring him to Tensas Detention Center. *Id.*

Plaintiff claims that, on either February 19 or 20, 2020, Nurse Welch tried "to force him to take the wrong medication after [he] explained his mental illness." *Id.* at 2-3, 4. He told Welch that the medication makes him vomit. *Id.* at 2. The medication hurt him in the past, and his "stomach can't hold the pills down." [doc. # 1-2, pp. 1, 6]. He refused to take the medication Welch provided. [doc. # 1-2, p. 1].

Plaintiff also told Welch that "the psychiatrist list is (9) nine months long and that [he] ha[d] no choice but to take the wrong medication." [doc. # 15, p. 2]. Welch allegedly responded that Plaintiff had "nine years left so he has a long [sic] to be forced by his illness to take the medication." *Id.* Plaintiff maintains that BCC does not have a psychiatrist and that Welch lied "about the facility having a psychiatrist"; he suggests, in other words, that Welsh knew there was no psychiatrist, told him to wait to see the psychiatrist to alter his medication, and thereby knew that he would never receive the proper medication. *Id.* at 2-3.

Plaintiff suggests that, because Welch reviewed his mental-health records, Welch was aware of his medical needs and intentionally caused him psychological pain. *Id.* at 2-3. He also suggests that, without his proper medication, he was "unfit to eat and exercise[,]" he contemplated suicide, he suffered high blood pressure and pain, and he was "forced to listen to the black shadows and lay in the bed in fear for his life". *Id.* at 2-3. He suggests further that

Welch's actions "caused him to feel physically ill, have chest pains, panic attacks, and profuse sweating." [doc. # 16, p. 1].

He seeks "damages" in amount the Court "sees fit," punitive damages, and "compensatory damages" for his mental anguish, fear, fright, embarrassment, humiliation, and distress. *Id.* at 2, 4. He also asks the Court to prevent Welch from "stopping another inmate like Plaintiff from doing normal things people do in prison . . . ." *Id.*

Plaintiff maintains that now, at Tensas Detention Center, he receives one of his "right and approved medications," Seroquel. *Id.* at 1. He also maintains that the medication he once requested "is now provided through Dr. Janna at Tensas Detention Center and it was the same [medication he] requested" from Nurse Welch, which Welch refused to provide. *Id.* at 2. "The medication Dr. Janna [has Plaintiff] on is stopping Plaintiff from acting out from his mental illness." *Id.*

Plaintiff claims that he "had the flu twice from drinking contaminated water mixed with coffee . . . ." *Id.* He alleges: "The parish of Madison was ordered to evacuate but [he] didn't know it was because of the water because officials at BCC never made any announcements." *Id.*

Plaintiff claims that he requested care from Nurse Welch for his influenza symptoms, but Welch "never called" him. *Id.* Consequently, he suffered "extreme body pain, headaches, and flu symptoms along with lack of sleep from waking up in cold sweats." *Id.*

Plaintiff baldly claims, "exercise." *Id.* at 4. He adds that "this claim" caused him to endure back pain, knee pain, neck pain, arthritis in his right hand, and swelling in his feet. *Id.*

Plaintiff, overall, endured mental anguish, distress, unspecified bodily injuries, chest pains, panic attacks, profuse sweating, "pain and suffering," permanent impairment and disability, fear, fright, embarrassment, humiliation, and aggravation. [doc. #s 1, p. 9; 16, p. 1].

In addition to the requests for relief recounted above, he seeks $100,000.00, transfer to a "D.O.C." facility to receive medicine from a psychiatrist, an appointment with a "psychiatrist when needed," and a declaration that defendants' actions "violate the law." [doc. # 1, pp. 3-5]. He also seeks punitive damages, $1,500.00, and reimbursement for his court costs. [doc. # 15, pp. 1, 4].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[4] See *Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis*,* his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

---

[4] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

4

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926

F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. No Grievance Procedure**

Plaintiff claims that Sheriff Byrd does not maintain a "grievance system" at BCC and that officials destroy, and fail to answer, grievances.

A prisoner, however, does "not have a constitutional right to have his grievances resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices . . . ." *Burgess v. Reddix*, 609 F. App'x 211 (5th Cir. 2015); see *Alexander v. Texas Dep't of Criminal Justice*, 2020 WL 826452, at *2 (5th Cir. Feb. 20, 2020) (affirming dismissal of a claim that grievances were mishandled or improperly denied because "prisoners have no due process rights in the inmate grievance process."); *Geiger*, 404 F.3d at 371 (holding that an inmate does not have a "federally protected liberty interest in having [] grievances resolved to his satisfaction."); *Smallwood v. Castillo*, 289 F. App'x 803, 805 (5th Cir. 2008) (finding, where the plaintiff claimed that the defendants destroyed or lost his grievance, that the claim was "without legal basis.").

The Court should dismiss these claims.

**3. Religion**

Plaintiff claims that BCC lacks "muslim call out" and "Church call out," and "officials put pressure on Plaintiff to significantly modify his religious behavior . . . . Plaintiff acted in a way that violated his religious beliefs from the lack of medication(s)." [doc. #s 1, p. 3, 9; 15, p. 3].

"To fall within the purview of the Free Exercise Clause, a claimant must possess a sincere religious belief."[5] *DeMarco v. Davis*, 914 F.3d 383, 388 (5th Cir. 2019). The Court must then evaluate whether the regulation or practice "is reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). "An inmate retains his right to the free exercise of religion, subject to reasonable restrictions stemming from legitimate penological concerns." *Id.*

Here, Plaintiff's claims are conclusory. Plaintiff does not: explain the circumstances surrounding his claim, allege whether he possesses a sincere religious belief, or explain how, and to what extent, defendants' actions limit or affect *his* exercise of religion.[6] He claims that officials pressured him to significantly modify his religious behavior; however, he simply invites the question: *how* was he forced to modify his religious behavior? Overall, Plaintiff fails to plead enough facts. Consequently, his claims are implausible, and the Court should dismiss

---

[5] See *Wisconsin v. Yoder*, 406 U.S. 205, 216 (1972) (noting that "philosophical and personal . . . belief does not rise to the demands of the Religion Clauses"); *Soc'y of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1212 (5th Cir. 1991), on reh'g, 959 F.2d 1283 (5th Cir. 1992) (citation omitted) ("[T]he Free Exercise query is whether this particular plaintiff holds a sincere belief that the affirmation is religious.").

[6] Plaintiff appears to seek relief on behalf of other prisoners. For instance, in a grievance he allegedly filed at BCC—which he asks the Court to consider as a part of his pleadings—he maintained that "dozens of inmates can't practice their religion on their own." [doc. # 1-2, p. 10]. Plaintiff, however, lacks standing to pursue relief on behalf of other inmates.

7

them.[7]

### 4. Failure to Train

Plaintiff claims: "Sheriff Byrd participated in the 'deficient management of subordinates' because a supervisor may be liable if a staff member violates your constitutional rights because of that supervisor's mismanagement of subordinates . . . ." [doc. # 15, p. 1].

"Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994). "'[A] plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation.'" *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (quoting *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)).

Here, Plaintiff's claim is entirely conclusory. He claims that Sheriff Byrd either mismanaged or failed to train his subordinates, but he does not explain how. He does not explain the circumstances surrounding his claim, and he does not clarify the result of this alleged mismanagement or failure to train. Rather, he seems to claim that Byrd is vicariously liable for an unspecified action(s) or inaction of unidentified subordinates. Byrd cannot be vicariously liable; the Court should dismiss this claim.

### 5. Retaliation

Plaintiff claims that Sheriff Byrd retaliated after he filed grievances, transferring him to

---

[7] Below, the undersigned addresses Plaintiff's allegations concerning the lack of medication.

Tensas Detention Center.

To prevail on a retaliation claim, a plaintiff must prove: (1) the exercise of a specific constitutional right; (2) the defendants' intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation, which in this context means that, but for the retaliatory motive, the complained of incident would not have occurred. *McDonald v. Steward*, 132 F.3d 225, 2331 (5th Cir. 1998). Courts must "carefully scrutinize" retaliation claims to "assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).[8]

A plaintiff must produce direct evidence of motivation or allege a chronology of events from which retaliation may be plausibly inferred. *Woods*, 60 F.3d at 1161. "Mere conclusory allegations of retaliation are insufficient[,] . . . a plaintiff must allege more than his personal belief that he has been the victim of retaliation." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). With respect to the third prong above, "Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Smith v. Hebert*, 533 F. App'x 479, 482 (5th Cir. 2013).

Here, Plaintiff does not plausibly allege a retaliatory adverse act. "[A] claim that an inmate was transferred to a more dangerous prison in retaliation for an exercise of a constitutional right will support a Section 1983 claim." *Ward v. Fisher*, 616 F. App'x 680, 684 (5th Cir. 2015). Plaintiff does not allege that Tensas Detention Center is more dangerous than, or inferior to, BCC. To the contrary, Plaintiff maintains that, at Tensas Detention Center, he

---

[8] "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Id.* (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

9

receives the medication he lacked at BCC. Moreover, Tensas Detention Center is not inferior to BCC because it, like BCC, lacks a psychiatrist; rather, the two facilities are equal in this respect. The Court should dismiss this claim.

**6. Medical Care**

The Court should retain Plaintiff's denial-of-medical-care claims against Nurse Welch. First, Plaintiff claims that Nurse Welch tried "to force him to take the wrong medication after [he] explained his mental illness." *Id.* at 2-3. He told Welch that the medication makes him vomit. *Id.* at 2. The medication hurt him in the past, and his "stomach can't hold the pills down." [doc. # 1-2, pp. 1, 6]. He also suggests that Welch intentionally deprived him of the proper medication by telling him to wait to see a psychiatrist that Welch knew Plaintiff would never see.

Construed liberally and in Plaintiff's favor, he plausibly alleges that Welch intentionally treated him incorrectly. Welch knew Plaintiff could not ingest (or retain) the medication provided, knew that Plaintiff was exposed to a substantial risk of serious harm without medication, and refused to provide or arrange alternative care. While it appears Plaintiff eventually received the proper medication following his transfer to Tensas Detention Center, he plausibly alleges that he suffered substantial harm due to the approximately three-week delay (February 19, 2020, to March 12, 2020).[9] [See doc. #s 1-2, p. 1; 15, p. 4; 7, p. 1]. Moreover, Plaintiff requests—in part—cognizable relief.[10]

---

[9] That said, Plaintiff's claim appears to emanate more from intentional incorrect treatment rather than from a mere delay in treatment. See *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (The *mere* delay of medical care can also constitute an Eighth Amendment violation but only "if there has been deliberate indifference [that] results in substantial harm.") (emphasis added).

[10] For instance, Plaintiff seeks compensatory relief for chest pain and increased blood pressure, (plausibly) greater-than-de minimis physical injuries. See *Calhoun v. Hargrove*, 312 F.3d 730,

Second Plaintiff claims that he contracted influenza and that Nurse Welch accepted his "sick-call form" but "never called" him, causing him to endure extreme body pain, headaches, other unspecified symptoms of influenza, and lack of sleep. [doc. # 15, p. 3]. Plaintiff pleads a plausible claim.

**7. Conditions of Confinement**

Plaintiff claims that he "had the flu twice from drinking contaminated water mixed with coffee . . . ." [doc. # 15, p. 3]. He alleges: "The parish of Madison was ordered to evacuate but [he] didn't know it was because of the water because officials at BCC never made any announcements." *Id.*

The Court should dismiss this claim because Plaintiff does not identify a responsible defendant.

Next, Plaintiff claims without elaboration: "exercise." *Id.* at 4. "This claim" caused him to endure back pain, knee pain, neck pain, arthritis in his right hand, and swelling in his feet. *Id.*

This claim is conclusory, and the Court should dismiss it.[11]

## Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that, with the exception of Plaintiff's claims against Nurse Welch for forcing him to accept the wrong medication and

---

734–35 (5th Cir. 2002). Construed in his favor, he also seeks relief encompassing nominal damages: "damages whatever the court cite and sees fit . . . . [sic]." [doc. # 15, p. 2]. See *Neutron Depot, LLC v. Bankrate, Inc.*, 2018 WL 6588573, at *1 (W.D. Tex. Aug. 16, 2018) ("Where, as here, the plaintiff's complaint seeks all such further relief as the Court deems necessary and proper, it is unnecessary for the plaintiff to specifically plead nominal damages."). Plaintiff also seeks punitive damages.

[11] The undersigned also considered this allegation as part of Plaintiff's larger denial-of-medical-care narrative. As above, he suggests that, because Nurse Welch provided medication detrimental to his health, he was unable to exercise.

11

refusing to treat him when he contracted influenza, Plaintiff Charley James' claims be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 1st day of April, 2020.

Karen L. Hayes
United States Magistrate Judge