UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **CHARLEY JAMES** | **CASE NO. 3:20-CV-00308 SEC. P** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **SAMMY BYRD, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court pursuant to 28 U.S.C. § 636(b)(1)(B), is a motion for summary judgment [doc. # 41] filed by defendant(s) "Sammy Byrd, et al.," but, in effect, only by defendant, Nurse Welch -- as she is the lone remaining defendant in the case. The motion is opposed. For reasons detailed below, it is recommended that defendant's motion for summary judgment be GRANTED, and that plaintiff's remaining claims be DISMISSED without prejudice on the merits, but DISMISSED with prejudice for purposes of proceeding in forma pauperis pursuant to 28 U.S.C. § 1915.

## Procedural History

On March 9, 2020, the court received a pro se civil rights complaint under 42 U.S.C. § 1983 from plaintiff Charley James, in which he complained about conditions of confinement at the Bayou Correctional Center ("BCC") in Tallulah, Louisiana, where he was housed for 20 days from February 20 until March 11, 2020. *See* Complaint; Change of Address Notice [doc. # 7]. James raised myriad issues pertaining to his short-lived tenure at the BCC, and amended his complaint at least three times pursuant to court order. *See* doc. #s 8, 15-17. Nonetheless, the only claims that survived initial review were plaintiff's claims that BCC Nurse Welch forced him to accept the wrong medication and refused to treat him when he contracted influenza. *See* April 1, 2020, R&R [doc. # 19] and April 14, 2020, Judgment [doc. # 23].

Per the report and recommendation:

>	Plaintiff claims that, on either February 19 or 20, 2020, Nurse Welch tried "to force him to take the wrong medication after [he] explained his mental illness." *Id*. at 2-3, 4. He told Welch that the medication makes him vomit. *Id*. at 2. The medication hurt him in the past, and his "stomach can't hold the pills down." [doc. # 1-2, pp. 1, 6]. He refused to take the medication Welch provided. [doc. # 1-2, p. 1].
>	Plaintiff also told Welch that "the psychiatrist list is (9) nine months long and that [he] ha[d] no choice but to take the wrong medication." [doc. # 15, p. 2]. Welch allegedly responded that Plaintiff had "nine years left so he has a long [sic] to be forced by his illness to take the medication." *Id.* Plaintiff maintains that BCC does not have a psychiatrist and that Welch lied "about the facility having a psychiatrist"; he suggests, in other words, that Welsh knew there was no psychiatrist, told him to wait to see the psychiatrist to alter his medication, and thereby knew that he would never receive the proper medication. *Id*. at 2-3.
>	Plaintiff suggests that, because Welch reviewed his mental-health records, Welch was aware of his medical needs and intentionally caused him psychological pain. *Id*. at 2-3. He also suggests that, without his proper medication, he was "unfit to eat and exercise[,]" he contemplated suicide, he suffered high blood pressure and pain, and he was "forced to listen to the black shadows and lay in the bed in fear for his life". *Id*. at 2-3. He suggests further that Welch's actions "caused him to feel physically ill, have chest pains, panic attacks, and profuse sweating." [doc. # 16, p. 1].
>	He seeks "damages" in amount the Court "sees fit," punitive damages, and "compensatory damages" for his mental anguish, fear, fright, embarrassment, humiliation, and distress. *Id.* at 2, 4. He also asks the Court to prevent Welch from "stopping another inmate like Plaintiff from doing normal things people do in prison . . . ." *Id.*
>	Plaintiff maintains that now, at Tensas Detention Center, he receives one of his "right and approved medications," Seroquel. *Id.* at 1. He also maintains that the medication he once requested "is now provided through Dr. Janna at Tensas Detention Center and it was the same [medication he] requested" from Nurse Welch, which Welch refused to provide. *Id*. at 2. "The medication Dr. Janna [has Plaintiff] on is stopping Plaintiff from acting out from his mental illness." *Id*.
>	Plaintiff claims that he "had the flu twice from drinking contaminated water mixed with coffee . . . ." *Id*. He alleges: "The parish of Madison was ordered to evacuate but [he] didn't know it was because of the water because officials at BCC never made any announcements." *Id*. Plaintiff claims that he requested care from Nurse Welch for his influenza symptoms, but Welch "never called" him. *Id*. Consequently, he suffered "extreme body pain, headaches, and flu symptoms along with lack of sleep from waking up in cold sweats." *Id*.

(R&R, pgs. 2-3).

On April 1, 2020, the court completed its initial screening pursuant to 28 U.S.C. §§ 1915 and 1915A and ordered service on defendant, Nurse Welch. [doc. # 18]. Welch filed a pro se answer on June 16, 2020, which was marked deficient by the Clerk of Court. [doc. #s 35-36]. On June 26,

2020, counsel enrolled on behalf of Welch and filed an answer. [doc. #s 37-39].

On July 2, 2020, Nurse Welch filed the instant motion for summary judgment seeking dismissal of plaintiff's complaint for failure to exhaust available administrative remedies prior to filing suit [doc. # 41]. Plaintiff filed an opposition and supplemental opposition to the motion. [doc. #s 46 & 48]. Defendant did not file a reply brief and the time to do so has lapsed. *See* Notice of Motion Setting. [doc. # 42]. Thus, the matter is ripe.

## Analysis

### I. Summary Judgment Principles

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.* "No genuine issue of material fact exists if the summary-judgment evidence is such that no reasonable juror could find in favor of the nonmovant."

3

*Jenkins v. Methodist Hospitals of Dallas, Inc.*, 478 F.3d 255, 260 (5th Cir. 2007) (citation omitted).

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in his favor. *Anderson*, 477 U.S. at 255. While courts will "resolve factual controversies in favor of the non-moving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). There can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-323. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

When a movant bears the burden of proof on an issue, she must establish "beyond peradventure[1] all of the essential elements of the claim . . . to warrant judgment in h[er] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish her right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

**II. Administrative Exhaustion**

    a) <u>Law</u>

Pursuant to 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and is required even where the relief sought cannot be granted by the administrative

---

[1] I.e., beyond doubt.

4

process. *Woodford v. Ngo*, 548 U.S. 81, 85, 126 S.Ct. 2378, 2382-83 (2006) (citations omitted). All "available" remedies must be exhausted, whether speedy and effective, or not. *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002). "Proper exhaustion requires that the prisoner not only pursue all available avenues of relief but also comply with all administrative deadlines and procedural rules." *Johnson v. Kukua*, 342 Fed. Appx. 933, 934 (5th Cir. 2009) (citing *Woodford, supra*). **An untimely or otherwise procedurally defective administrative grievance does not satisfy the exhaustion requirement**. *Id*. (emphasis added). Exhaustion is an affirmative defense; thus, the burden is on defendant to establish that plaintiff failed to exhaust available administrative remedies. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). If the court considers evidence beyond the pleadings to resolve the exhaustion issue, then the nonmoving party is entitled to the protections of Rule 56. *Id*.

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter, supra* (citation omitted). An inmate is required to "exhaust his remedies, irrespective of the form of relief sought, injunctive or monetary." *Richbourg v. Horton*, 2008 WL 5068680 (5th Cir. Dec. 2, 2008) (unpubl.) (citation omitted). In addition, exhaustion applies to claims brought against defendants in their official and/or individual capacities. *See e.g., Williams v. Henagan*, 595 F.3d 610, 618 (5th Cir. 2010); *Hines v. Texas*, 76 Fed. Appx. 564 (5th Cir. 2003).

**A prisoner is required to exhaust all steps of a grievance process even if the prison fails to respond to his grievances at an earlier step in the process**. *Wilson v. Epps*, 776 F.3d 296, 302 (5th Cir.2015) (plaintiff failed to proceed through all three steps of the grievance process; instead, he completed only the first step, and then filed suit when those grievances were not responded to in a timely fashion); *Hicks v. Lingle*, 370 F. Appx. 497, 499 (5th Cir. 2010); *Ates v. St. Tammany Parish*,

Civ. No. 13-5732, 2014 WL 1457777 (E.D. La. Apr. 15, 2014). Moreover, to the extent that language on the form or policy regarding subsequent step review is phrased in discretionary rather than mandatory terms, the prisoner still must exhaust all "available" steps. *Ates, supra* (and cases cited therein); *see also Hicks, supra* (inmate required to proceed to second step even though procedure said only that inmate "may appeal" if dissatisfied with first step response); *Wilson, supra* (subsequent steps of grievance process remained unexhausted even though phrased permissively as "may request," and "may appeal"). In short, the courts "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth v. Churner*, 532 U.S. 731, 741, 121 S. Ct. 1819, 1825, n.6 (2001).

In 2016, the Supreme Court explained that "[u]nder § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, ___ U.S. ___, 136 S.Ct. 1850, 1858 (2016). The Court then looked to dictionary definitions of "available," to conclude that an inmate is "required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id*. (citations omitted).[2]

The Court recognized three circumstances where an inmate's duty to exhaust administrative remedies may be excused, or in statutory parlance, deemed unavailable. *Id*. First, an administrative procedure is unavailable where officers consistently are unable or unwilling to provide relief to aggrieved inmates. *Id*. (citation omitted).[3] Second, exhaustion is not required where an

---

[2] Whether administrative remedies are "available" is a question of law, but the resolution of that question may turn on questions of fact. *Leggett v. Lafayette*, 608 Fed. Appx. 187, 190 (5th Cir.2015).

[3] The Supreme Court provided some examples,
> [s]uppose, for example, that a prison handbook directs inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions. The procedure is not then "capable of use" for the pertinent purpose. In *Booth*'s words: "[S]ome redress for a wrong is

administrative scheme is so opaque that it is unknowable in the sense that no ordinary prisoner can discern its requirements. *Id*. Finally, the administrative process is rendered unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*.[4]

The Fifth Circuit consistently has held that an inmate's ignorance of a prison's grievance procedures does not excuse his noncompliance. *Aguirre v. Dyer*, 233 Fed. Appx. 365 (5th Cir. 2007) (citation omitted); *Simkins v. Bridges*, 350 Fed. Appx. 952, 953-954 (5th Cir. 2009) (citation omitted); *Plaisance v. Cain*, 374 Fed. Appx. 560, 561 (5th Cir. 2010) (citation omitted). Nonetheless, inmates should have "avenues for discovering the procedural rules governing their grievances." *Dillon, supra* (citations omitted). When an inmate has no means of verifying the administrative grievance process, then misleading information by prison officials may make remedies unavailable. *Id*. "If impediments to filing grievances render remedies unavailable at one facility, remedies may become available again once a prisoner has been transferred, unless there are other problems at the new facility." *Dillon*, 596 F.3d at 267-268 (citing *Bryant v. Rich*, 530 F.3d 1368, 1379 (11th Cir.2008)).

    b)    <u>The BCC had an Available Administrative Remedy Procedure</u>

In his complaint, plaintiff stated that the BCC did not have a grievance procedure. [doc. # 1,

---

    presupposed by the statute's requirement" of an "available" remedy; "where the relevant administrative procedure lacks authority to provide any relief," the inmate has "nothing to exhaust." So too if administrative officials have apparent authority, but decline ever to exercise it. Once again: "[T]he modifier 'available' requires the possibility of some relief." When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy.

*Ross, supra* (internal citations omitted).

[4] "Grievance procedures are unavailable to an inmate if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process." *Davis v. Fernandez*, 798 F.3d 290, 295 (5th Cir.2015). Moreover, remedies are not available where institutional authorities refuse to provide a prisoner with the forms needed to exhaust administrative remedies. *Aceves v. Swanson*, 75 Fed. Appx. 295, 296 (5th Cir.2003).

7

pgs. 1]. However, he submitted a grievance anyway, but it was never answered. [doc. # 1, pg. 1]. Furthermore, in response to defendant's motion for summary judgment, plaintiff submitted excerpts from the BCC Offender Handbook, which included a section on grievances and grievance procedures. [doc. # 48-1, pgs. 20-22].[5] The Handbook stated that the BCC has a two-step grievance procedure that applies to all offenders at the facility for any policy, condition, or incident at the facility that affects the offender personally. *Id*.

The offender begins the procedure by filling out an offender grievance form and giving it to the shift supervisor. *Id*. If the grievance is on a plain piece of paper, the offender may obtain a photocopy of the grievance for $.10 per page. *Id*. The captain will screen the grievance, and if accepted, will have an appropriate staff member complete a statement. *Id*. The staff member will be the step one respondent. *Id*. The step one respondent will respond to the offender within fifteen days from the date the completed grievance is referred to him or her. *Id*.

An offender not satisfied with the step one response may request a review by the warden by signing the bottom of the response to the grievance form. *Id*. The grievance must be addressed to the warden. *Id*. The offender will receive the warden's review decision, in writing, within five days after the warden receives the request for step two review. *Id*.

All grievances must be processed from beginning to end within twenty days, unless an extension has been granted. *Id*. If an extension has not been granted, and the offender has not received a response in the set time frame, then the offender can move on to the next step in the

---

[5] In defendant's motion for summary judgment brief, she relied on provisions of the grievance procedure utilized by the Louisiana Department of Public Safety and Corrections ("LDPSC"). *See* 22 La. Admin. Code, Title 22 Pt I, § 325. However, the BCC had its own grievance procedure that applied to all offenders housed there, and with which plaintiff was acquainted. Accordingly, the court will apply the grievance procedure identified and relied upon by plaintiff. In any event, the outcome would remain the same even if the court were to apply the LDPSC's grievance procedure.

8

grievance process. *Id*.

   c) <u>Plaintiff Failed to Exhaust Available Administrative Remedies Prior to Filing Suit</u>

  In support of her motion for summary judgment, defendant adduced competent summary judgment evidence to show that plaintiff was housed at the BCC from February 20, 2020, until March 11, 2020. (Declaration of BCC Warden Billy Tigner; Def. MSJ [doc. # 41-3]). BCC Warden Billy Tigner reviewed BCC records and confirmed that "at no time was a grievance received from [James]." *Id*.

  In response to defendant's motion, plaintiff stated that he filed two grievances at the BCC on the first day of his arrival at the facility after his conversation with Nurse Welch. (Pl. Opposition [doc. # 48]). Plaintiff added that he completed the grievance on regular writing paper and filed copies of the grievances with the Clerk of Court. *Id*. Plaintiff further explained that he was shipped to another facility as soon as his grievances were discovered, and consequently, he was excused from completing any remaining steps of the grievance process. *Id*.

  Plaintiff attached to his complaint a handwritten document dated "2-20-20" and entitled "This is a grievance under the Administrative Remedy Procedure." [doc. # 1-2]. In this grievance, plaintiff complained that the BCC nurse had required him to take medication that had hurt him in the past, even though the medication had been ordered on "2-19-20," i.e., just immediately prior to his arrival at the BCC. *Id*. He further stated that he already had "a dozen of enem[ies] here . . .," which seems odd given that he only arrived at the BCC that same day.

  Plaintiff also attached to his complaint a second, handwritten document again dated "2-20-20" and also entitled "This is a grievance under the Administrative Remedy Procedure." [doc. # 1-2]. In this grievance, plaintiff complained about other conditions of confinement at the BCC, and even mentions that on "the 23rd of February," i.e., three days after the grievance was dated, that the side rails of the bunkbed were moving. *Id*. Plaintiff further stated that during his "first week at [the

9

BCC]," he contracted the flu from drinking contaminated water. *Id*. In short, the allegations in the grievance indicate that it was written some time after February 23, and not on February 20 -- the date that he arrived at the BCC.

The court emphasizes that while the Clerk of Court received the instant complaint on March 9, 2020, the envelope that enclosed the complaint and its attachments includes what appears to be a March 4, 2020 date stamp, plus two other date stamps, 6 March 2020 and 7 March 2020. (Envelope [doc. # 1-3]). Of course, under the prison mailbox rule, a prisoner's pleading is deemed to have been filed on the date that the pro se prisoner submits the pleading to prison authorities for mailing. *Harris v. Doe*, No. 18-638, 2019 WL 5739062, at *3 (N.D. Tex. Nov. 5, 2019) (collecting cases). Therefore, here, the instant suit was considered filed as early as March 4 or 6, 2020, but, in any event no later than March 7, 2020.

If, as plaintiff contends, he submitted his initial grievances on the same day that he arrived at the BCC, i.e., February 20, 2020, then, according to the grievance procedure, the step one respondent had 15 days thereafter to respond to the grievance, which, in this leap year, was until March 6, 2020. If plaintiff submitted his complaint to the prison authorities for mailing on March 4 or 6, then he did not wait the requisite 15 days for it to be constructively denied by the step one respondent's failure to respond to the grievance.

Even if plaintiff had submitted the complaint for mailing as late as March 7, 2020, it is manifest that he did not submit a step two request for warden review, or then wait the requisite five days for the warden to respond to the request for review before filing suit. While plaintiff contends that he was "shipped" to another facility before he was able to complete the grievance process, he was not transferred until March 11, 2020 – several days after plaintiff had truncated the grievance process by filing suit before all the delays for each step of the process had run.

In sum, the court finds that, prior to filing suit, plaintiff did not fully exhaust his claims that

10

defendant failed to provide him with his medication of choice or to treat his flu symptoms that he purportedly contracted from contaminated water.[6]

        d)        <u>Remedy for Failure to Exhaust</u>

The plain language of the PLRA precludes any further action on plaintiff's claims until he has fully exhausted the administrative remedy procedure.[7] Dismissal is the remedy, and although it is typically without prejudice,[8] the court is authorized to dismiss plaintiff's complaint with prejudice to his right to re-file it, in forma pauperis ("IFP"):

> [b]y choosing to file and pursue his suit prior to exhausting administrative remedies as required, [plaintiff] sought relief to which he was not entitled-that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures. We therefore affirm the district court's order dismissing [plaintiff]'s action with prejudice for purposes of proceeding IFP.

*Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998) (overruled by implication on other grounds by *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 920-21 (2007)).

The foregoing approach is appropriate here. Accordingly, if plaintiff exhausts his administrative remedies with respect to the claims raised herein, he may present these § 1983 claims again, but may not proceed in forma pauperis to do so.[9]

---

[6] Insofar as plaintiff argued that the grievance procedure was unavailable because officers consistently were unable or unwilling to provide relief to aggrieved inmates, he did not set forth evidence to support a finding that officers *never* accorded relief.

[7] *See Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir.1998) (overruled by implication on other grounds by *Jones v. Bock*, 549 U.S. 199, 214, 127 S. Ct. 910, 920 (2007) (§ 1997e(a) "plainly requires that administrative remedies be exhausted before the filing of a § 1983 suit, rather than while the action is pending . . . [t]o hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation.").

[8] *See e.g., Plaisance v. Cain, supra*; *Cooper v. Quarterman*, 342 Fed. Appx. 12, 13 (5th Cir. 2009).

[9] Of course, administrative exhaustion requires "proper" exhaustion, i.e., compliance with an agency's deadlines and other critical procedural rules. *Woodford, supra.* At this point, plaintiff's delay effectively may foreclose his ability to properly exhaust available administrative remedies.

**Conclusion**

For the above-stated reasons,

IT IS RECOMMENDED that the motion for summary judgment [doc. # 41] filed on behalf of the lone, remaining defendant, Nurse or "Ms" Welch be GRANTED, and that plaintiff's remaining claims against said defendant be DISMISSED, without prejudice on the merits, but DISMISSED with prejudice for purposes of proceeding in forma pauperis pursuant to 28 U.S.C. § 1915.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 28th day of July 2020.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE